NOT DESIGNATED FOR PUBLICATION

No. 126,041

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DUSTIN TAYLOR CURNUTT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Submitted without oral argument. Opinion filed June 7, 2024. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Ethan Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before BRUNS, P.J., HILL, J., and MARY E. CHRISTOPHER, S.J.

PER CURIAM: Dustin Curnutt appeals from his conviction for driving under the influence. He argues sufficient evidence does not support his conviction because the State failed to prove beyond a reasonable doubt that the influence of alcohol rendered him incapable of safely driving a vehicle. Based on a review of the record on appeal, we find the State presented sufficient evidence upon which a rational fact-finder could conclude beyond a reasonable doubt that Curnutt was guilty of driving under the influence. Thus, we affirm Curnutt's conviction.

1

FACTUAL AND PROCEDURAL BACKGROUND

Around 10:30 p.m. on May 21, 2021, Deputy Christopher Winslow of the Saline County Sheriff's Office noticed a white Pontiac Bonneville with the passenger side headlight out. The deputy began following the vehicle and observed it cross over the center line a few times and then swerve within the lane. Consequently, he initiated a traffic stop. The vehicle pulled over, and the deputy identified the driver and sole occupant as Curnutt.

Deputy Winslow initially noticed that Curnutt's eyes were bloodshot and watery. The deputy testified Curnutt seemed to have difficulty pulling his license out of his wallet. Curnutt provided the deputy with his driver's license but no proof of insurance. The deputy noticed that there was a Corona Light bottle that was three-quarters full in the cupholder. When asked about the beer bottle, Curnutt told the deputy that it was a passenger's from earlier. The deputy asked Curnutt whether he had consumed any alcohol that night, to which Curnutt responded, "No."

Deputy Winslow went back to his vehicle to scan Curnutt's driver's license. While back in his vehicle, the deputy observed Curnutt empty the contents of the Corona Light bottle outside his window. The deputy told Curnutt that he watched him pour out the bottle and asked Curnutt to step out of his vehicle so he could determine whether Curnutt was safe to drive. Curnutt refused several times and told the deputy that he would not perform any "'human tricks'" for him. The deputy testified Curnutt was noncompliant, but he did not find him to be aggressive or antagonistic.

At this point, Deputy Winslow noticed that Curnutt smelled like alcohol, but Curnutt's speech was not "overly slurred." Based on his observations, the deputy determined that he would need to conduct a field sobriety test to continue his investigation and asked Curnutt to exit his vehicle. Curnutt again refused, even when

Deputy Winslow informed him that he was under arrest for noncompliance. The deputy said Curnutt refused to exit his vehicle several times, probably three or four times.

Eventually Curnutt exited the vehicle, and Deputy Winslow placed him under arrest. In doing so, Curnutt told the deputy, "'I'll get out and we'll box.'" The deputy then conducted a search of the vehicle incident to arrest. On the passenger side floor of the vehicle, the deputy found an empty Corona bottle, a half-empty Svedka vodka bottle, and two Corona bottle caps. The deputy placed Curnutt in the back of the patrol vehicle to transport him to the jail.

While in route to the jail, Curnutt bashed his head against the metal cage, causing a minor gash on his forehead, and hurled several vulgarities at Deputy Winslow. At the jail, Curnutt refused to perform the Intoxilyzer test, a device that measures breath alcohol content. The deputy testified that he did not seek a warrant for a blood draw because his superiors had directed officers to avoid obtaining blood samples unless there were extenuating circumstances. He also felt that there were not enough officers present to safely conduct a blood draw and would be concerned for the safety of any nurses or officers administering the draw.

In September 2022, a jury found Curnutt guilty of one count of driving under the influence of alcohol in violation of K.S.A. 2020 Supp. 8-1567(a)(3) and (b)(1)(A), one count of transporting an open container of alcohol in violation of K.S.A. 2020 Supp. 8-1599, and one count of failing to provide proof of motor vehicle liability insurance in violation of K.S.A. 2020 Supp. 40-3104(a) and (g)(1). For each of his three misdemeanor convictions, the district court sentenced Curnutt to six months' imprisonment in the Saline County Jail, and all three sentences would run concurrent with one another. The district court then suspended Curnutt's jail sentence and placed him on 12 months' probation.

Curnutt timely appeals.

## ANALYSIS

*The State presented sufficient evidence to support Curnutt's conviction for driving under the influence.*

Curnutt argues there was insufficient evidence for a rational fact-finder to conclude beyond a reasonable doubt that the influence of alcohol rendered him incapable of safely driving because there were no signs of impairment. The State responds that Curnutt's actions showed he was incapable of safely driving without further need for field sobriety testing or instrumental testing.

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.' [Citations omitted.]" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

"This is a high burden, and only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020). A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. Circumstantial evidence, in order to be sufficient, need not exclude every other reasonable conclusion. *State v. Colson*, 312 Kan. 739, 750, 480 P.3d 167 (2021).

Under K.S.A. 8-1567(a)(3), driving under the influence is defined as operating a vehicle while "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle."

Curnutt's argument relies primarily on Deputy Winslow's testimony that he had not completed his investigation to determine whether Curnutt was impaired when he was placed under arrest for declining to submit to field sobriety testing. Curnutt argues the evidence shows the deputy was uncertain whether Curnutt was impaired, so he simply arrested Curnutt based on his noncompliance. Curnutt contends his refusal to submit to field sobriety testing was insufficient evidence of impairment. In addition, Curnutt admits to swerving across the center line and within his own lane, but he contends it was momentary and not to an unsafe extent. And while the deputy testified Curnutt smelled of alcohol, had bloodshot eyes, and had an opened beer bottle, Curnutt asserts these are indications of consumption, not impairment. To further show he was not impaired, Curnutt points to evidence that he properly pulled over his vehicle in response to the emergency signal, did not slur his speech, had no issue handling his driver's license, and had no difficulty exiting the vehicle.

The Kansas Court of Appeals has consistently held that a defendant's refusal to submit to sobriety testing may provide circumstantial evidence to support the conviction because it tends to show conduct indicating a consciousness of guilt. See *State v. Huff*, 33 Kan. App. 2d 942, 946, 111 P.3d 659 (2005); *State v. Rubick*, 16 Kan. App. 2d 585, 587-88, 827 P.2d 771 (1992); *City of Salina v. McNeill*, No. 122,447, 2021 WL 642310, *2 (Kan. App. 2021) (unpublished opinion). In *Huff*, the panel determined the district court was justified in using Huff's refusal to submit to field sobriety tests and Intoxilyzer tests to determine whether Huff was incapable of safely driving a vehicle. 33 Kan. App. 2d at 946. When coupled with circumstantial evidence that Huff was speeding, drove off the road, slurred his speech, had bloodshot eyes, fumbled to find his driver's license, and

5

smelled of alcohol, the panel concluded sufficient evidence existed to find Huff guilty of driving under the influence. 33 Kan. App. 2d at 945-46.

Curnutt recognizes this court's ruling in *Huff* but asks this panel to compare his case to *State v. Arehart*, 19 Kan. App. 2d 879, 878 P.2d 227 (1994). In *Arehart*, the district court essentially held that consumption of one alcoholic drink was by itself sufficient evidence to prove Arehart was impaired to the extent that he was incapable of safely driving a vehicle. The *Arehart* panel reasoned that the district court's hardline rule ran contrary to the minimum standards required by K.S.A. 8-1567(a)(3). 19 Kan. App. 2d at 882. Thus, because the district court failed to make any evidence-based determinations and proof of consumption of alcohol, without more, was insufficient to support a conviction, the panel reversed Arehart's conviction and remanded for a new trial. 19 Kan. App. 2d at 882. Curnutt argues the evidence presented at trial only proved that he consumed alcohol and did not show that he was impaired by the alcohol to the extent that he was incapable of safely driving.

We find Curnutt's situation distinguishable from *Arehart* and more comparable to *Huff*, however, because there were multiple pieces of circumstantial evidence that could have led a reasonable fact-finder to determine Curnutt was impaired to the extent he was incapable of safely driving a vehicle. Deputy Winslow saw Curnutt drive over the center line into oncoming traffic and weaving within his own lane, and the deputy's testimony is supported by patrol vehicle dash camera footage. The deputy testified that Curnutt had bloodshot, watery eyes and smelled of alcohol. After the deputy asked Curnutt about an opened beer bottle, Curnutt poured the contents of the bottle out the window while the deputy was scanning Curnutt's license. Curnutt refused to exit his vehicle and submit to field sobriety testing. Then, when Curnutt finally exited the vehicle, he threatened to fight the deputy. The deputy found an empty beer bottle, two beer bottle caps, and a half-empty bottle of vodka inside Curnutt's vehicle. Finally, Curnutt bashed his head against the metal cage and yelled at the deputy while in transport to the jail.

When viewing this evidence in a light most favorable to the State, a reasonable fact-finder could have found the influence of alcohol rendered Curnutt incapable of safely driving. Curnutt's irregular driving, his bloodshot and watery eyes, the alcohol odor, the opened alcohol containers, his refusal to submit to sobriety testing, and his erratic behavior during the traffic stop and after his arrest provide sufficient evidence to support Curnutt's conviction for driving under the influence in violation of K.S.A 2020 Supp. 8-1567(a)(3).

Affirmed.